**Peggy KIMZEY, Plaintiff,**

v.

**WAL–MART STORES, INC., et al., Defendant.**

**No. 94–4195–CV–C–5.**

United States District Court, W.D. Missouri, Central Division.

Nov. 17, 1995.

Carla Holste, Carson & Coil, Jefferson City, MO, for Plaintiff.

E. Wayne Taff, Steven Steinhilber, Sherman, Taff & Bangert, Kansas City, MO, for Defendant.

## ORDER

SCOTT O. WRIGHT, Senior District Judge.

Before this Court are defendant Wal–Mart's Renewed Motion for Judgment as a Matter of Law or, in the alternative, For a New Trial, or in the alternative To Remit the Jury Verdict; plaintiff's Opposition; and defendant's Reply. Based on the following analysis, defendant's Motion For a New Trial is denied, but defendant's Motion to Remit is granted.

### Background

On June 28, 1995, after a two-day trial, the jury in the above-named cause returned a verdict for plaintiff on her sexual harassment and constructive discharge claims. Plaintiff was awarded thirty-five thousand dollars and one dollar, respectively. In addition, the jury assessed fifty million in punitive damages against defendant. Defendant filed this motion alleging that several errors were made at trial, and that the punitive damage award was improper.

### Analysis

As a preliminary matter, defendant renews its Motion For Judgment as a Matter of Law and sets out over fifty-seven unsupported errors for which relief is requested. This Court finds defendant's complaints to be meritless and therefore will not address them. Instead, this Court will consider the issues fully outlined in defendant's Suggestions in Support of a New Trial.

■ A new trial should be granted when there has been a "miscarriage of justice." Absent such a finding, the trial court should overrule the motion. *White v. Pence,* 961 F.2d 776, 780–81 (8th Cir.1992). The author-ity to grant a new trial is "confided almost entirely to the exercise of discretion on the part of the trial court." *Id.* at 781 (citations omitted).

1. Sexual Harassment Claim

■ Defendant first argues that a new trial is warranted because the verdict was based on comments and conduct that the plaintiff subjectively believed did not constitute a hostile or abusive work environment. In support, defendant points to plaintiff's deposition testimony that she "enjoyed" the atmosphere at work prior to April 1992, that she was "happy and comfortable" working there, and that she "saw nothing sexually offensive or hostile about the receiving department." (Def's. Trial Ex. 45–47, 49). Therefore, defendant contends, as a threshold matter, plaintiff cannot satisfy the elements necessary to make a hostile work environment claim because she did not subjectively believe *at the time of the conduct* that her work place was hostile or abusive. Defendant cites *Harris v. Forklift Sys., Inc.,* — U.S. ——, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), to support its argument.

This Court believes that defendant mischaracterizes *Harris.* In *Harris,* the petitioner sued her former employer claiming that the company president's conduct toward her constituted sexual harassment. *Harris,* — U.S. at ——, 114 S.Ct. at 368. The Court, in clarifying the hostile work environment elements stated, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Id.* at ——, 114 S.Ct. at 370. The Court does not rigidly require that a plaintiff form a well-defined, subjective belief of hostility at the exact moment an incident occurs. In fact, the Court stated that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Id.* at ——, 114 S.Ct. at 371. One

could easily imagine a victim at first not wanting to believe that an employer was engaging in hostile behavior, or even wanting to ignore the situation hoping it was merely a misunderstanding, and then upon reflection or after a series of events determining that she was indeed a victim of harassment.

Beyond Wal–Mart's interpretation of *Harris,* its argument lacks merit. Plaintiff testified at trial that after the comments and conduct of manager Mike Mais (Mais) and supervisor Bud Brewer (Brewer), she felt "humiliated," "stupid," "degraded," and "offended." She testified that men were treated as friends and with respect while women were treated as inferior. She told the jury that the offensive language and the inappropriate behavior created a hostile work environment. Clearly plaintiff had a subjective belief that she worked in an abusive environment.

In a related complaint, defendant contends that this Court should not have permitted testimony from plaintiff or other witnesses regarding Mais' behavior or comments before April 1992. Wal–Mart again asserts that plaintiff did not have the requisite state of mind at that time to permit the introduction of such evidence, but further argues that the Title VII and Missouri Human Rights Act (MHRA) statutes of limitations barred use of the testimony.

■ Since the issue of plaintiff's subjective belief has been decided, this Court will now turn to defendant's statute of limitations argument. Pursuant to Title VII, a plaintiff normally would only be permitted to seek redress for discriminatory behavior that occurred within 300 days of an Equal Employment Opportunity Commission filing. *See* 42 U.S.C. § 2000e–5(e). Defendant asserts that incidents of discriminatory conduct barred from recovery by the statute of limitations should also have been barred from trial.

■ The Title VII statutory limitations period, however, is not necessarily a bar to the admissibility of pre-statute acts. *See West v. Philadelphia Elec. Co.,* 45 F.3d 744, 748 (3rd Cir.1995) (acts which bear on the work environment and on the employer's awareness of that environment are relevant),

*Scott v. Pac. Maritime Ass'n,* 695 F.2d 1199, 1205 (9th Cir.1983), *Song v. Ives Lab., Inc.,* No. 86 CIV. 4358, 1990 WL 96768 at *1 (S.D.N.Y. July 3, 1990) (acts in furtherance of a discriminatory policy should not be viewed in isolation). Time-barred claims can be used as "relevant background" or used to support a continuing violation theory. *See United Air Lines Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977), *Chaffin v. Rheem Mfg. Co.,* 904 F.2d 1269, 1271 (8th Cir.1990), *Abdulrahim v. Glick Co, Inc.,* 612 F.Supp. 256, 260 (N.D.Ind.1985). In sexual harassment cases, particularly those based on the hostile environment theory, it is reasonable to expect that violations are continuing in nature. In fact, a hostile environment results from acts that continue over time. *West,* 45 F.3d at 744, 755.

When assessing an ill patient, an internist does not limit the examination to an isolated part of the body or focus narrowly on one complaint. Instead, the internist investigates all patient complaints, examines the body as a whole, and considers the patient's entire medical history before a diagnosis is made. So must a jury examine all relevant aspects of the work environment, including background information, before a judgment on the issue of discrimination can be made. The pre–1992 actions of Mais were directly relevant to plaintiff's hostile environment theory and to her claim that management added to the abusive environment by ignoring her complaints and even participating in discriminatory conduct. No error was committed in admitting this evidence. Similarly, the hostile work environment verdict director instruction was not flawed even though no time frame limitation was included.

■ Finally, Wal–Mart argues that the testimony of other employees regarding their complaints about management should have been excluded. In general, "evidence of sexual harassment directed at employees other than the plaintiff is relevant to show a hostile work environment." *Hall v. Gus Const. Co., Inc.,* 842 F.2d 1010, 1015 (8th Cir.1988) (citations omitted). Defendant particularly takes issue with the testimony of Nola Smith regarding a complaint that she made about a

disciplinary form placed in her personnel file and management's reaction. Wal–Mart argues that the complaint had nothing to do with sexual harassment or a hostile working environment. There is no requirement that sexual harassment, to be violative of Title VII, take the form of sexual advances. *Id.* at 1014. Any harassment or other unequal treatment of an employee that would not occur but for the sex of the employee can be sufficient to show a Title VII violation. *Id.* Nola Smith, as well as other female employees, testified that women were treated differently from men, and that their concerns were not respected.

Further, counsel for defendant proposed in his opening statement that Wal–Mart had an "open-door" policy for taking complaints. Defendant carried the theme throughout trial that plaintiff failed to take advantage of this policy to voice her harassment complaints. Nola Smith's testimony was relevant to the validity of this policy and ultimately to the validity of defendant's theme. The testimony was properly admitted.

## 2. Punitive Damage Award

The bulk of defendant's suggestions in support address the validity of the fifty million dollar punitive damage award. Defendant challenges the award, claiming that it fails to satisfy Missouri law and violates the Due Process Clause of the Fifth and Fourteenth Amendments.

## A. Threshold for Jury Submission

■ Wal–Mart first complains that the evidence submitted at trial failed as a matter of law to meet either the Missouri or the Title VII standards for awarding punitive damages because there was no evidence to support the position that Wal–Mart "willfully" or "recklessly" allowed a hostile work environment to exist. Defendant points to plaintiff's testimony that Brewer's conduct was mean and directed to all employees. Wal–Mart argues that Mais thoroughly investigated plaintiff's complaints and offered her job options. Finally, defendant emphasizes Wal–Mart's "open door" complaint system and states that it was readily available to plaintiff.

■ This Court agrees with defendant that in order to recover punitive damages under Title VII, a complaining party must show that "the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual" and that under Missouri law, some element of wantonness, willfulness, outrageousness, or reckless disregard must be shown. *See* 42 U.S.C. § 1981a(b)(1), *Menaugh v. Resler Optometry, Inc.,* 799 S.W.2d 71, 73 (Mo.1990) (en banc), *Burnett v. Griffith,* 769 S.W.2d 780, 787 (Mo. 1989) (en banc). This Court, however, strongly disagrees with defendant's assessment of the evidence presented to the jury.

Plaintiff, along with other female witnesses, specifically testified that Brewer and Mais treated men and women differently. Witnesses testified that Mais had a habit of kicking the female employees in the legs as he would pass. Plaintiff described incidents where Mais commented on her breasts, shook a ladder almost causing her to fall, and held a screwdriver to her back saying, "I think I found a place to put my screwdriver." She testified that Brewer was often under the influence of alcohol, that he constantly followed her around, that he commented on her "tight-assed jeans," and that he often would use hostile and abusive language reducing her and other female employees to tears.

■ The jury heard testimony from plaintiff that she went to Mais, a member of management, with her complaints and nothing was done to improve her environment. Even though policies permitted stronger actions including drug testing, Brewer admitted that Mais' investigation consisted of merely asking him if he was drinking. Mais did offer plaintiff alternative positions at Wal–Mart, but she testified that those jobs did not carry the same benefits and hours as her job in receiving offered. In addition, this Court will not encourage businesses to remedy a hostile work environment by removing plaintiffs from their positions. The removal punishes the wrong party and essentially

condones the illegal behavior by allowing the hostile environment to continue.

Regarding the "open-door" policy, plaintiff and other witnesses testified that the policy did not exist and that employees were discouraged from complaining to management outside of their store. One former employee told the jury that Mais informed her that it would do no good to complain to a higher ranking manager.

Further supporting a finding of maliciousness or reckless disregard, Brewer testified that although the Wal–Mart policy stated that violations of the Civil Rights Act would. not be tolerated, he was not familiar with the Act and had not received any training concerning what it prohibited. Ample evidence existed to support a submission of the punitive damage issue to the jury.

### B. Punitive Damage Instruction

█ Defendant next attacks the punitive damage instruction arguing that it violated due process. In *Pacific Mut. Life Ins. Co. v. Haslip,* the Supreme Court generally reviewed the common law method for awarding punitive damages and specifically considered Alabama's procedure to determine if they violated due process. 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). The Court examined the jury instructions propounded by the trial court. *Haslip,* 499 U.S. at 19, 111 S.Ct. at 1044. The instructions described the purpose of punitive damages by directing jurors that punitive damages were "not to compensate the plaintiff for any injury" but "to punish the defendant" and "for the added purpose of protecting the public by [deterring] the defendant and others from doing such wrong in the future." *Id.* (quoting appellate brief at 105–06) (bracketed material in original). The Court, in finding that due process was not violated, held that "[t]he instructions ... enlightened the jury as to the punitive damages' nature and purpose, identified the damages as punishment for civil wrongdoing of the kind involved, and explained that their imposition was not compulsory." *Id.*

Instruction Number Eleven delivered by this Court informed the jury that "the law permits [a] jury under certain circumstances to award an injured person punitive damages in order to punish the defendant for some extraordinary misconduct and to serve as an example or warning to others not to engage in such conduct" and that they "may, but are not required to, award plaintiff an additional amount as punitive damages if ... it is appropriate to punish the defendant or to deter defendant and others from like conduct in the future." The jury was additionally instructed that "whether to award plaintiff punitive damages, and the amount of these damages, [were] within [their] discretion." This instruction certainly constrained the jury's discretion, and as a result, due process was satisfied. *See Haslip,* 499 U.S. at 20, 111 S.Ct. at 1044.

Defendant specifically alleges that the Court erred by failing to include the word "outrageousness" in the instruction. In addition, Wal–Mart argues that the jury should have been instructed to consider mitigating circumstances. *Haslip* did not create the requirement that juries consider mitigating factors. Further, the Eighth Circuit has noted that *Haslip* "leaves the way open to a holding that other systems ... also comply with the Constitution...." *Benny M. Estes and Assoc., Inc. v. Time Ins. Co.,* 980 F.2d 1228, 1235 (8th Cir.1992). Instruction Number Eleven contained the essential discretion limiting language required by *Haslip.* Therefore, the constitutional requirements were met.

Defendant's argument regarding the absence of the word "outrageous" from the instruction is meritless. Defendant, itself, argued that "the phraseology differs in different kinds of [Missouri] cases, but all [punitive damage standards] depend on willful wrongdoing or recklessness which is the legal equivalent of willfulness." (Def.'s Supp. at 4–5). For defendant to now single out one word from the host of phrases highlighted by Missouri courts is absurd.[1]

---

1. This Court instructed the jury that, in order for them to award punitive damages, they must find "that defendant acted with malice or with reck-

less indifference to plaintiff's right not to be discriminated against on the basis of her

### 3. Independent Review

■ Although the jury was sufficiently instructed in this case, and the constitutional requirements set out in *Haslip* were satisfied, this Court must independently review the jury's punitive damage award to provide an "additional check" on the jury's discretion. *Haslip*, 499 U.S. at 20, 111 S.Ct. at 1044. Among proper factors for consideration are "the culpability of the defendant's conduct," the "desirability of discouraging others from similar conduct," the "impact upon the parties," and "other factors, such as the impact on innocent third parties." *Id.* (quoting *Hammond v. City of Gadsden*, 493 So.2d 1374, 1379 (1986)). The *Haslip* court articulated additional factors that may be weighed including the "financial position" of the defendant, the relationship between the damage award and the harm done, and the reprehensibility of the defendant's conduct. *Haslip*, 499 U.S. at 21–22, 111 S.Ct. at 1045. Missouri courts also recognize the essential nature of a trial court review and generally examine the *Haslip* factors in addition to mitigating and aggravating factors that may be present or characteristics of each party including age, sex, and health. *Moore v. Missouri–Nebraska Express., Inc.*, 892 S.W.2d 696, 713–14 (Mo.Ct.App.1994).

■ After reviewing all the applicable factors, this Court finds that the amount of this punitive damage award is too excessive to stand. The power of remittitur, therefore, must be exercised to reduce the punitive amount to five million dollars. *See Ouachita Natl. Bank v. Tosco Corp.*, 716 F.2d 485, 488 (8th Cir.1983) (district court should grant remittitur only when the verdict is so grossly excessive as to shock the court's conscience) (reversed on other grounds), Mo.Stat.Ann. § 510.263.6 (Vernon 1994) ("The doctrines of remittitur and additur, based on the trial judge's assessment of the totality of the surrounding circumstances, shall apply to punitive damage awards").

The Supreme Court refuses to draw a "mathematical bright line" between awards which are so grossly excessive as to violate the Constitution and those that do not, but instead focuses on reasonableness. *TXO Prod. Corp. v. Alliance Resources Corp.*, —— U.S. ——, ——, 113 S.Ct. 2711, 2720, 125 L.Ed.2d 366 (1993) (citations omitted). This Court is first forced to consider the relationship between the punitive damages and the actual damages awarded in this case due to the tie to harm or injury. The jury in this case awarded plaintiff thirty-five thousand dollars and one dollar in actual damages. The jury's assessment of actual harm clearly bore no real relationship to the punitive damages awarded.[2] *See Haslip*, 499 U.S. at 23, 111 S.Ct. at 1046 (punitive award four times greater than amount of compensatory damages and 200 times greater than out-of-pocket expenses "may be close to the line"). More than likely, the disparity arose from the aggravating behavior of defense counsel at trial. For example, while cross-examining plaintiff, counsel approached, waved "the finger" in her face, and rudely shouted, "fuck you". In addition, defendant only put on one witness—Brewer—although Mais was present throughout the trial.

The five million dollar amount more reasonably reflects the connection to the harm done in this case. The award is still large enough, however, to adequately punish defendant and to deter others. It reflects the maliciousness of defendant's behavior—management's participation in the harassing behavior, their failure to improve the environment or to properly educate its supervisors about The Civil Rights Act, and their attempt to punish plaintiff by forcing her to change jobs. No mitigating factors existed for this Court to consider. Defendant argues that this Court should consider plaintiff's testimony that she wanted to work in the relaxed atmosphere of receiving and that she chose to return there. It is undisputed, however, that plaintiff enjoyed the work in the receiving department. It was the hostile work environment that she found to be intolerable.

### Conclusion

After careful review of the arguments of both parties, this Court finds that defendant

---

sex...." The element of willfulness was properly articulated.

**2.** This Court's ruling in no way implies that sexual harassment cannot cause substantial injury.

has shown no miscarriage of justice necessitating a new trial. However, due to the excessiveness of the punitive damage award, remittitur is appropriate.

Accordingly, it is hereby

ORDERED that defendant's Renewed Motion For Judgment as a Matter of Law is denied. It is further

ORDERED that defendant's Motion For a New Trial is denied. It is further

ORDERED that defendant's Motion to Remit the Jury Verdict is granted and the punitive damage award shall be reduced to five million dollars.