Mary H. STEELE, Plaintiff–Appellant,

v.

OFFSHORE SHIPBUILDING, INC., a Florida Corporation, et al., Defendants–Appellees.

Barbara J. McCULLOUGH, Plaintiff–Appellant,

v.

OFFSHORE SHIPBUILDING, INC., a Florida Corporation, et al., Defendants–Appellees.

No. 88–3141.

United States Court of Appeals, Eleventh Circuit.

March 15, 1989.
Rehearing and Rehearing In Banc Denied April 19, 1989.

---

John F. MacLennan, Conrad Joseph Cendrowski, Kattman, Eshelman & MacLennan, Jacksonville, Fla., for plaintiff-appellant.

Gary A. Bubb, John N.C. Ledbetter, Toole, Bubb & Beale, Jacksonville, Fla., for defendants-appellees.

Before JOHNSON, HATCHETT and COX, Circuit Judges.

HATCHETT, Circuit Judge:

In this Title VII sexual harassment case, we affirm the district court's ruling that the corporate employer is not liable for the unlawful actions of its supervisor. Nevertheless, we remand the case to the district court on attorneys' fees issues.

## I. FACTS

Offshore Shipbuilding, Inc. (OSI) builds and repairs offshore commercial vessels in Palatka, Florida. McCallister Brothers, Inc. (McCallister), a New York corporation, owns OSI. When building a vessel, OSI employs up to 350 people. Until 1984, these employees enjoyed a great deal of freedom. They entered and left the facility at their discretion and worked overtime without prior approval. In 1982, OSI hired Mary H. Steele, as an executive secretary. In January, 1984, OSI hired Barbara J. McCullough, as an emergency medical technician and safety person.

In August, 1984, OSI hired Anthony Bucknole, as its vice president and general manager. When it hired Bucknole, OSI employed 50 people. OSI instructed Bucknole to reduce overhead costs and to improve its financial condition. Consequently, Bucknole managed strictly, combined job duties, and made employees account for their time. He required Steele to remain at her desk during business hours, and he assigned McCullough to the tool room and gave her responsibility for company insurance matters.

Despite his strict management style, Bucknole often engaged in sexually-oriented joking with employees. For example, Bucknole requested sexual favors from Steele and McCullough. He commented on their attire in a suggestive manner and asked them to visit him on the couch in his office. The district court found, however, that Bucknole never intended to carry out his suggestions.

Occasionally, Steele and McCullough also engaged in sexually-oriented joking with Bucknole. For example, in December, 1984, Steele and several other employees gave Bucknole a sexually-explicit gift. Nevertheless, Steele and McCullough kept detailed notes of Bucknole's offensive comments.

In March, 1985, Steele and McCullough reported Bucknole to his superiors in New York for sexual harassment. McCallister's Equal Employment Opportunity Officer, James Forbes, interviewed Steele and McCullough in Palatka and advised them that McCallister would take remedial measures against Bucknole. At that time, Bucknole was in Saudi Arabia. Forbes returned to New York and consulted with other McCallister officials. The McCallister officials summoned Bucknole to New York from Saudi Arabia and verbally reprimanded him. The officials told Bucknole that his offensive conduct must stop immediately.

On March 27, 1985, Forbes and Bucknole returned to Palatka and met with Steele and McCullough. Forbes told Steele and McCullough that Bucknole would stop making offensive comments. He also assured Steele that her position at OSI was safe as long as she performed her duties properly. Bucknole did not harass Steele and McCullough after this meeting. On April 8, 1985, however, Steele and McCullough quit, leav-

ing resignation letters with the facility gate guard.

## II. PROCEDURAL HISTORY

In December, 1986, Steele and McCullough (hereinafter "the employees") sued Bucknole, OSI, and McCallister (hereinafter the "corporate employer"). The employees sought damages on three counts: sexual harassment and constructive discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e (West 1981); tortious invasion of privacy; and intentional infliction of emotional distress. On October 1, 1987, the court consolidated the cases. Shortly thereafter, the employees dropped the emotional distress claim.

On October 29, 1987, Bucknole and the corporate employer moved for judgment on the pleadings or, in the alternative, to strike the demand for a jury trial. The district court granted the motion, dismissing the invasion of privacy count and striking the jury trial demand.

After a non-jury trial, the district court set forth three rulings. First, it held that the corporate employer did not constructively discharge the employees. The court found that the employees voluntarily resigned because the corporate employer failed to fire Bucknole. Second, the district court held that Bucknole, as an agent of the corporate employer, violated Title VII by creating a hostile working environment. Bucknole did not violate Title VII, however, through any work-related actions. The court ordered Bucknole to pay the employees nominal damages and reasonable attorneys' fees. Finally, the court held that the corporate employer was not liable for the hostile environment because it took prompt remedial action after it learned of Bucknole's actions.

In a subsequent order, the court set attorneys' fees at $16,650. The attorneys contended that they expended 276 hours, but the district court ruled that 165 hours was a reasonable amount of time to spend on the case.

## III. CONTENTIONS OF THE PARTIES

The employees contend that the district court improperly relied on *Ponton v. Scarfone,* 468 So.2d 1009 (Fla. 2d D.C.A.1985) in dismissing the invasion of privacy count. Second, they contend that the corporate employer is directly liable for Bucknole's actions because Bucknole is its agent. Third, they contend that the corporate employer constructively discharged them by failing to stop Bucknole's sexual harassment. Finally, the employees contend that the district court improperly calculated attorneys' fees by failing to explain its decision to reduce the number of hours.

Bucknole and the corporate employer contend that *Ponton* precludes application of the invasion of privacy tort to this situation. They argue that, even if the cause of action applies, insufficient publication exists to support the claim. The corporate employer next contends that it is not liable for Bucknole's actions. The corporate employer argues that it is not directly liable because Bucknole did not use his supervisory authority against the employees, and it is not indirectly liable because it took prompt remedial action against Bucknole. The corporate employer also contends it did not constructively discharge the employees because Bucknole's harassment stopped before they quit. Finally, Bucknole contends that the district court's calculation of attorneys' fees should be upheld because the attorneys submitted inadequate proof of their claim.

## IV. ISSUES

The issues presented on appeal are: (1) Whether the district court erred in dismissing the invasion of privacy count for failure to state a cause of action; (2) whether the district court erred in finding the corporate employer not liable for Bucknole's acts of sexual harassment; (3) whether the district court erred in finding that the corporate employer did not constructively discharge; and (4) whether the district court erred in assessing the award of attorneys' fees.

## V. DISCUSSION

### A. Invasion of Privacy

■ The employees contend that the district court improperly relied on *Ponton v. Scarfone,* 468 So.2d 1009 (Fla. 2d D.C.A. 1985) in dismissing the invasion of privacy count. While we agree that *Ponton* does not preclude an invasion of privacy action for sexually-related comments, we find that the employees failed to prove that Bucknole sufficiently published his comments.

Florida recognizes the invasion of privacy tort. *Forsberg v. Housing Authority,* 455 So.2d 373 (Fla.1984); *Cason v. Baskin,* 155 Fla. 198, 20 So.2d 243 (1944). The *Ponton* court limited the action where an employer's attempt to induce an employee into a sexual liaison failed to fall "within that zone of conduct permitting a determination that [the employee's] right of privacy was unlawfully invaded." *Ponton,* 468 So.2d at 1010. *Ponton* does not preclude an invasion of privacy action where an employer's conduct falls within that zone.

The cause of action for invasion of privacy failed because the employees did not prove sufficient publication. In Florida, except in cases of physical invasion, the tort of invasion of privacy must be accompanied by publication to the public in general or to a large number of persons. *Santiesteban v. Goodyear Tire and Rubber Co.,* 306 F.2d 9, 11 (5th Cir.1962). *See Rawls v. Conde Nast Publications, Inc.,* 446 F.2d 313, 319 (5th Cir.1971), *cert. denied,* 404 U.S. 1038, 92 S.Ct. 712, 30 L.Ed. 2d 730 (1972); *Sacco v. Eagle Finance Corp.,* 234 So.2d 406, 408 (Fla. 3d D.C.A. 1970). Bucknole did not physically invade privacy. His offensive comments were never made to more than "one individual or a few." *Santiesteban,* 306 F.2d at 11. Therefore, insufficient publication existed to support the invasion of privacy claim. We affirm the district court's dismissal of the invasion of privacy claim.

### B. The Corporate Employer's Liability

The employees contend that the corporate employer is directly liable for Bucknole's harassment because Bucknole and the corporate employer are both Title VII "employers." Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person...." 42 U.S.C. A. § 2000e(b) (West 1981). The corporate employer contends it is neither directly liable nor indirectly liable for Bucknole's actions. We agree with the corporate employer and affirm the district court's holding that the corporate employer is not liable for Bucknole's actions.

#### 1. *Quid Pro Quo v. Hostile Environment Sexual Harassment*

■ Sexual harassment violates Title VII's prohibition of employer discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's ... sex...." 42 U.S.C.A. § 2000e-2(a)(1) (West 1981). *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Henson v. City of Dundee,* 682 F.2d 897 (11th Cir.1982). Courts recognize two forms of sexual harassment: *quid pro quo* sexual harassment and hostile work environment sexual harassment. *Vinson,* 477 U.S. at 65–66, 106 S.Ct. at 2405; *Henson,* 682 F.2d at 908 n. 18, 910. *See Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1413 (10th Cir. 1987); *Katz v. Dole,* 709 F.2d 251, 254–55 (4th Cir.1983). *Quid pro quo* sexual harassment occurs when an employer alters an employee's job conditions as a result of the employee's refusal to submit to sexual demands. *Vinson,* 477 U.S. at 65, 106 S.Ct. at 2405; *Henson,* 682 F.2d at 908. *See* 29 C.F.R. § 1604.11(a)(1–2) (1987). Hostile environment sexual harassment occurs when an employer's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment." *Vinson,* 477 U.S. at 65, 106 S.Ct. at 2405 (quoting 29 C.F.R. § 1604.11(a)(3) (1987)); *Henson,* 682 F.2d at 904.

Bucknole's actions constituted only hostile environment sexual harassment. The district court correctly found that changes in working conditions did not result from Bucknole's harassment. Bucknole tightened management to improve OSI's financial condition. He did not demand sexual favors as a *quid pro quo* for job benefits.

### 2. Corporate Liability for Sexual Harassment

■ The standard for determining corporate liability due to a supervisor's sexual harassment depends on the type of sexual harassment that occurs. In a *quid pro quo* case, the corporate defendant is strictly liable for the supervisor's harassment. *Henson*, 682 F.2d at 909–10. *See Crimm v. Missouri Pacific Railroad Co.*, 750 F.2d 703, 710 (8th Cir.1984). This is logical. When a supervisor requires sexual favors as *quid pro quo* for job benefits, the supervisor, by definition, acts as the company.

In such a case, the supervisor relies upon his apparent or actual authority to extort sexual consideration from an employee. Therein lies the *quid pro quo*. In that case the supervisor uses the means furnished to him by the employer to accomplish the prohibited purpose. He acts within the scope of his actual or apparent authority to 'hire, fire, discipline or promote.'

*Henson*, 682 F.2d at 910 (quoting *Miller v. Bank of America*, 600 F.2d 211, 213 (9th Cir.1979)).

Strict liability is illogical in a pure hostile environment setting. In a hostile environment case, no *quid pro quo* exists. The supervisor does not act as the company; the supervisor acts outside "the scope of actual or apparent authority to hire, fire, discipline, or promote." Corporate liability, therefore, exists only through *respondeat superior;* liability exists where the corporate defendant knew or should have known of the harassment and failed to take

prompt remedial action against the supervisor. *Henson*, 682 F.2d at 905; *Bundy v. Jackson*, 641 F.2d 934, 943 n. 8 (D.C.Cir. 1981). *See Vinson*, 477 U.S. at 72, 106 S.Ct. at 2408 (court of appeals erred by concluding that employer was automatically liable for hostile environment sexual harassment by supervisor).

Because this is purely a hostile environment case, the district court properly applied the *respondeat superior* standard. The corporate employer knew of Bucknole's harassment, and it then took prompt remedial action. The corporate employer sent Forbes to Palatka to interview the employees; it called Bucknole to New York from Saudi Arabia for a reprimand; and it assured the employees that the harassment would stop. Of special importance, Bucknole's harassment ended after the remedial action. The corporate employer, therefore, is not liable for Bucknole's actions under the doctrine of *respondeat superior.*

The employees argue that when a supervisor is also a Title VII "employer," the corporate employer becomes directly liable for all of the supervisor's actions.[1] They rely on *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554 (11th Cir.1987) (Hill, J., dissenting) and *Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900 (11th Cir. 1988) to support this contention. This reliance is misplaced because both *Sparks* and *Huddleston* dealt with hostile environment *and quid pro quo* sexual harassment.

*Sparks* involved a Title VII claim under three theories: disparate treatment; hostile environment sexual harassment; and *quid pro quo* sexual harassment. *Sparks*, 830 F.2d at 1556–67. The plaintiff in *Sparks* was a billing clerk; the defendants were her supervisor and a corporate employer. The *Sparks* district court granted summary judgment to the corporate defendants on all three counts. The court of appeals reversed and remanded. *Sparks*,

---

1. Steele misconstrues the concept of direct liability. Bucknole, an agent of the corporate employer, is *directly* liable for his actions that violate Title VII. Likewise, the corporate employer would be *directly* liable for Bucknole's actions taken within the scope of their agency.

However, when Bucknole acts outside the scope of the agency, the corporate employer can only be liable *indirectly* if it knew or should have known of Bucknole's actions and failed to take prompt remedial action.

830 F.2d at 1557. The *Sparks* court found that the supervisor, as an agent of the corporate entity, fit Title VII's definition of "employer." *Sparks*, 830 F.2d at 1558. The court also found that the supervisor often reminded the plaintiff that he could fire her if she failed to comply with his sexual advances. *Sparks*, 830 F.2d at 1560. The plaintiff, therefore, "established a genuine issue of material fact as to whether [the corporate defendant] is directly liable to her under Title VII.... Accordingly, the district court's grant of summary judgment on Sparks' hostile environment sexual harassment claim must be reversed." *Sparks*, 830 F.2d at 1560. The *Sparks* holding, however, applies only to situations in which a plaintiff is subject to *both quid pro quo* and hostile environment sexual harassment. The court stated:

> Therefore we need not address the issue raised by the EEOC, and not resolved by the Supreme Court, in *Vinson:* What rule should govern the employer's liability for sexual harassment by its supervisors where the sexual harassment claim rests 'exclusively' on a 'hostile environment' theory, in that the supervisor neither explicitly nor implicitly threatened to use his authority against the victim.

*Sparks*, 830 F.2d at 1560 n. 9. *See Huddleston*, 845 F.2d at 904–05.[2]

Bucknole's harassment did not relate to his supervisory authority. His conduct constituted only hostile environment sexual harassment; it did not constitute a combination of *quid pro quo and* hostile environment sexual harassment. Liability attaches to a corporate defendant in a pure hostile environment case through *respondeat superior.* This corporate employer is not liable under *respondeat superior* because it took prompt remedial action against Bucknole. We affirm the district court's holding that the corporate employer is not liable for Bucknole's Title VII violation.

### C. Constructive Discharge

 To prove constructive discharge, the employees must demonstrate that their working conditions were so intolerable that a reasonable person in their position would be compelled to resign. *Huddleston*, 845 F.2d at 905; *Wardwell v. School Board*, 786 F.2d 1554, 1557 (11th Cir.1986); *Bourque v. Powell Electrical Manufacturing Co.*, 617 F.2d 61, 65 (5th Cir.1980); *Young v. Southwestern Savings & Loan Association*, 509 F.2d 140, 144 (5th Cir.1975). Constructive discharge is a fact question subject to the clearly erroneous standard of review. *Wardwell*, 786 F.2d at 1557 (citing *Buckley v. Hospital Corporation of America*, 758 F.2d 1525, 1530–31 (11th Cir. 1985)).

The district court found that Bucknole's harassment stopped after the March 27, 1985 meeting between the employees, Bucknole, and Forbes. The court found that none of the employees' notes contained allegations of sexual harassment after March 27. The employees subsequently confirmed that Bucknole's harassment stopped in an interview with an Equal Employment Opportunity Commission investigator.

The employees argue that recording Bucknole's comments became futile. They allege, however, only one incident of harassment after the March 27 meeting; a comment by Bucknole that he needed to "document a case" on McCullough. The remainder of the employees' arguments pertain to incidents that occurred before March 27.

The employees' contentions do not leave us with a "definite and firm impression that a mistake has been made." *See American National Bank v. Federal Deposit Insurance Corp.*; 710 F.2d 1528, 1534 (11th Cir.1983). Accordingly, we affirm the district court's holding that the corpo-

---

**2.** "When [the supervisor] grabbed [the plaintiff] by her arm and physically moved her a few feet, he berated her for her job performance. The district court concluded that this action created a hostile working environment...." *Huddleston*, 845 F.2d at 904. Notwithstanding the court's "hostile environment" label, the supervisor's action also constituted *quid pro quo* sexual harassment. The supervisor *"berated her for her job performance."* Like the *Sparks* supervisor, he acted within his supervisory authority to hire, fire, discipline, or promote.

rate employer did not constructively discharge the employees.

### D. Attorneys' Fees

The attorneys reported that they expended 276 hours on this case. The court reduced that figure, stating: "The Court finds that due to the nature of the case and the evidence, this amount of time is unreasonable. The Court finds that it would be reasonable for partners of the skill and expertise of the partners in the plaintiffs' attorneys' law firm to expend 90 hours, and associates 75 hours, for a total of 165 hours." *Steele v. Offshore Shipbuilding, Inc.*, No. 86–1085 (M.D.Fla. Jan. 28, 1988) (order awarding attorneys' fees).

After the district court order, this court decided *Norman v. Housing Authority*, 836 F.2d 1292 (11th Cir.1988). The *Norman* court held that:

> The court's order on attorney's fees must allow meaningful review—the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation. *Adams v. Mathis*, 752 F.2d 553, 554 (11th Cir.1985). If the court disallows hours, it must explain which hours are disallowed and show why an award of these hours would be improper. *Hill v. Seaboard Coast Line R. Co.*, 767 F.2d 771, 775 (11th Cir.1985); *Fitzpatrick v. IRS*, 665 F.2d 327, 332–33 (11th Cir.1982).

*Norman*, 836 F.2d at 1304.

We find that the district court order does not "allow meaningful review." Accordingly, we remand with directions that the district court calculate reasonable attorneys' fees in accordance with the standards set forth in *Norman*.

### VI. CONCLUSION

We hold that: (1) the employees failed to prove the invasion of privacy claim; (2) the corporate employer is not liable for Bucknole's acts of sexual harassment; and (3) the corporate employer did not constructively discharge the employees.

We reverse and remand on the issue of attorneys' fees. We direct the district court to calculate reasonable fees in accordance with the standards set forth in *Norman v. Housing Authority*, 836 F.2d 1292 (11th Cir.1988).

AFFIRMED in part, REVERSED in part, and REMANDED.