**Barbara CHANCEY, et al., Plaintiffs,**

v.

**SOUTHWEST FLORIDA WATER MANAGEMENT DISTRICT, et al., Defendants.**

**No. 95–2027–CIV–T–17C.**

United States District Court, M.D. Florida.

April 24, 1997.

John A.C. Guyton, III, Rywant, Alvarez, Jones & Russo, P.A., Tampa, FL, for Barbara Chancey, Robin Tagliarini.

James Morgan Craig, Craig L. Berman, John–Edward Alley, Alley and Alley/Ford & Harrison, Tampa, FL, David S. Shankman, Newman, Levine, Metzler & Shankman, P.A., Tampa, FL, for Southwest Florida Water Management District.

Craig L. Berman, Alley and Alley/Ford & Harrison, Tampa, FL, for David Morgan.

### ORDER ON MOTION FOR RECONSIDERATION

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant's Motion for Reconsideration (Dkt.43), and Plaintiff's response (Dkt.46).

Defendant argues that the Court should have relied on *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311 (11th Cir.1989) in ruling on Counts I and II, and should have granted summary judgment to Defendant on Counts I and II. Under *Steele,* employer liability exists only where the corporate defendants knew or should have known of the harassment, and failed to take prompt remedial action against the supervisor. Defendant argues that where overtly sexual speech and conduct appears sporadic, and then ceased; the allegedly hostile worker was suspended, and there were no complaints about ongoing conduct, there can be no claim of sexually harassing hostile environment. Defendant argues Plaintiffs did not put Defendant on notice of a complaint about any

alleged continuing harassment from Spring, 1994 to December, 1994, when Plaintiffs resigned. Defendant notes that ostracism is not sufficient to support a finding of constructive discharge.

Plaintiff responds that the cases on which the Court relied, *Faragher v. City of Boca Raton,* 76 F.3d 1155 (11th Cir.1996), *vacated* 83 F.3d 1346, and *Davis v. Monroe County Board of Education,* 74 F.3d 1186 (11th Cir. 1996), *vacated* 91 F.3d 1418, rely upon standards defining hostile work environment as set forth by the Supreme Court. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986); *Harris v. Forklift Systems,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Plaintiffs further respond that under *Steele* respondeat superior analysis, Defendant may be liable because Defendant was on notice of the harassment of Plaintiffs after Plaintiffs complained to management. Plaintiffs further note that many of the incidents of harassment occurred at District offices where at least one member of upper management worked. Plaintiffs assert nothing was done after notice to management. Plaintiffs argue that summary judgment is not appropriate on the basis of indirect or direct employer liability.

Discussion:

A. Hostile Work Environment

Since the Court relied on cases that were vacated for rehearing en banc, the Court will reconsider its analysis based on the present precedent of the Eleventh Circuit, *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311 (11th Cir.1989).

Hostile environment sexual harassment occurs when an employer's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment." *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1315 (11th Cir.1989)(quoting *Vinson,* 477 U.S. at 65, 106 S.Ct. at 2405; *Henson,* 682 F.2d at 908).

In *Steele,* the Eleventh Circuit stated:

Strict liability is illogical in a pure hostile environment setting. In a hostile environ-

ment case, no quid pro quo exists. The supervisor does not act as the company; the supervisor acts outside "the scope of actual or apparent authority to hire, fire, discipline, or promote." Corporate liability, therefore, exists only through respondeat superior; liability exists where the corporate defendant knew or should have known of the harassment and failed to take prompt remedial action against the supervisor.

Defendant requests the Court enter an order granting summary judgment to Defendant on Counts I and II because the name-calling stopped at a certain point, and Plaintiffs did not complain of further incidents to the superiors of David Morgan, Plaintiffs' supervisor, after that point, in Spring, 1994.

■■■ The Court denies the Motion for Summary Judgment as to this issue. To be actionable under Title VII, conduct giving rise to a hostile work environment need not consist of sexual advances or have clear sexual overtones. Conduct of a nonsexual nature that ridicules women or treats them as inferior can constitute prohibited sexual harassment. *Sims v. Montgomery County Comm.,* 766 F.Supp. 1052, 1073 (M.D.Ala.1990). Threatening and bellicose conduct related to a person's sex can also be considered as sexual harassment. *Bell v. Crackin Good Bakers, Inc.,* 777 F.2d 1497, 1503 (11th Cir. 1985); *Robinson v. Jacksonville Shipyards, Inc.,* 760 F.Supp. 1486 (M.D.Fla.1991); *Hall v. Gus Construc., Co.,* 842 F.2d 1010, 1014 (8th Cir.1988); *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1415 (10th Cir.1987); *McKinney v. Dole,* 765 F.2d 1129, 1138 (D.C.Cir. 1985).

■■■ The Court finds that questions that should be resolved by the jury remain in this case, since Plaintiffs allege issues including, but not limited to, the restriction of work assignments, denial of overtime, retaliation, and requiring different standards of conduct for the female RPT's and male RPT's, and threatening behavior by Morgan towards Plaintiffs. There is the allegation that David Morgan told Chris Linhart that he would get even with Plaintiffs for getting him in trouble over the "sting" incident. There is also an issue for the jury as to whether upper man-

agement knew what was occurring, since Plaintiffs allege that Fritz Musselman, David Morgan's superior, ostracized Plaintiffs, along with David Morgan. The Court therefore **denies** the Motion for Reconsideration as to the hostile environment issue.

### B. Constructive Discharge

Defendant further requests reconsideration as to the issue of constructive discharge. In *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317 (11th Cir.1989), the Eleventh Circuit held that to prove constructive discharge, "the employees must demonstrate that their working conditions were so intolerable that a reasonable person in their position would be compelled to resign." The Court notes that Plaintiffs are not alleging mere ostracism alone. For the same reasons stated above, the Court **denies** the Motion for Summary Judgment as to constructive discharge.

### C. Equal Pay

Defendant argues that the Court should have granted summary judgment to Defendant on the basis that "as a general rule the provision of accommodations and funds for cleaning of uniforms will not constitute wages." *Laffey v. Northwest Airlines, Inc.*, 642 F.2d 578 (D.C.Cir.1980).

Defendant points out the two male RPT's patrolled remote areas, while the female RPT's reported to the Brooksville office daily. The male RPT's were required to live in pre-existing District-owned lodging, and their patrol vehicles were not returned daily.

Plaintiffs respond that they were denied equal access to wages, consisting of lodging and vehicle use.

### A. Lodging

According to the Affidavits of Bennett and Linhart, Bennett and Linhart contend that their residence on District lands was a condition of their employment. Chris Linhart resided with his family on District lands. Ken Bennett resided alone on District lands.

When lodging on District lands was offered to Plaintiff Chancey, Chancey refused because of her many pets (horses, dogs, cats, chickens, turkeys), and the District's policy that horses were permitted, but other animals were not.

As to Plaintiff Tagliarini, there is a factual dispute as to whether Plaintiff was offered free lodging, and therefore summary judgment is not appropriate as to Plaintiff Tagliarini.

The Court **denies** the Motion for Reconsideration as to lodging, finding that there is a factual dispute, and a jury question as to whether the lodging was solely for the benefit of the District.

### B. Vehicles

The Court notes that all four RPT's used District vehicles for District business, but District policy required the use of personal vehicles for personal use. The male RPT's who had 24–hour access to District vehicles were directed not to use them for personal business. Specifically, the Court notes that the unfavorable job evaluation of Chris Linhart includes the statement that he was observed using a District vehicle to take his children to the school bus stop.

To the extent that all RPT's were to use the District vehicles solely for business purposes, there can be no Equal Pay claim for vehicle use. However, to the extent that the District permitted personal vehicle use, there could be an issue as to Equal Pay. The Court therefore **denies** the Motion for Reconsideration as to vehicles. Accordingly, it is

**ORDERED** that Defendant's Motion for Reconsideration is **denied.**