United States Court of Appeals,

Eleventh Circuit.

No. 94-7053.

Toni FLEMING and Sherrye Alexander, Plaintiffs-Appellants,

v.

BOEING COMPANY d.b.a. Boeing Defense and Space Group;  Bob Philyaw, individually and in his official capacity, Defendants-Appellees.

Aug. 25, 1997.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV93-H-2224-NE), James H. Hancock, Judge.

Before TJOFLAT and COX, Circuit Judges, and CLARK, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

I.

This is an employment discrimination case which was resolved in favor of the employer on summary judgment.  The employees contend that material issues of fact remain to be litigated on their Title VII claims and ask that we remand the case for further proceedings.  We find no material issues of fact and therefore affirm the district court's judgment.

This appeal actually involves two discrete cases.  The first was brought by Toni Fleming, a full-time secretary for the Boeing Company.  The question presented by her appeal is whether she has made out a case of sexual harassment.  She contends that a Boeing engineer, Bobby Philyaw, touched her and "gazed" at her, that she complained to her superior, and that Boeing did not act quickly enough to eliminate the problem.[1]  Fleming seeks compensatory and punitive damages for the period of her employment in which she was subjected to such harassment.

The second case was brought by Sherrye Alexander;  she joined Fleming's case as a plaintiff when the district court granted her leave to do so.  Alexander came to Boeing in 1989 as an

---

[1]Appellants' amended complaint named both Boeing and Philyaw as defendants.  The district court dismissed all Title VII claims against Philyaw on the ground that he is not the appellants' employer, and therefore cannot be liable under Title VII. The appellants do not appeal this dismissal.

employee of Tempforce, a company that provided secretarial services on a temporary basis. Alexander left Boeing in November 1991 and is currently employed by the Department of the Army. She claims that, while she was at Boeing, she also was subjected to sexual harassment by Philyaw; he touched her, "gazed" at her, and made inappropriate remarks to her. In addition, she contends that Boeing rejected her application for a full-time secretarial position because she had complained about Philyaw's conduct. As remedies for the harassment and the rejection of her application, Alexander seeks an order requiring Boeing to employ her in the position she sought and a money judgment for back pay and compensatory and punitive damages.

Title VII forbids an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (1994). Sexual harassment is a form of sexual discrimination within the meaning of Title VII. *See, e.g., Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 65-67, 106 S.Ct. 2399, 2404-05, 91 L.Ed.2d 49 (1986). Two types of sexual harassment are prohibited by Title VII: *quid pro quo* harassment and hostile work environment harassment. *See Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1315 (11th Cir.1989). The district court held, and appellants do not dispute, that there was no evidence in the record of *quid pro quo* sexual harassment. The appellants' claims on appeal are thus confined to allegations of hostile work environment sexual harassment.

"Hostile environment sexual harassment occurs when an employer's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment.' " *Id.* at 1315 (quoting *Vinson,* 477 U.S. at 65, 106 S.Ct. at 2405). Title VII is violated "[w]hen the workplace is permeated with "discriminatory intimidation, ridicule, and insult' that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (quoting *Vinson,* 477 U.S. at 65, 67, 106 S.Ct. at 2405). The harassing conduct must create both an objectively hostile or abusive

2

environment—one "that a reasonable person would find hostile or abusive"—and a subjectively hostile or abusive environment—one that "the victim ... subjectively perceive[s] ... to be abusive." *Id.* at 21-22, 114 S.Ct. at 370.

With these principles in mind, we turn to the appellants' respective cases, commencing with Fleming's.

## II.

## A.

Fleming, who is black, has worked at Boeing as a secretary since 1985. In July of 1992, she was transferred by Boeing from the Space Station Freedom Program to the Systems Engineering Requirements Group (the "Group"). After beginning work in the Group, Fleming alleges that she was told by several secretaries that Philyaw, an engineer in the Group, had a "thing for black women." Fleming then began to document Philyaw's conduct, and her diary notes show that during September and October of 1992, Philyaw massaged her shoulders, pinched her arm, and touched and rubbed her hands. In late September or early October, Fleming asked Philyaw to stop touching her. After having this conversation with Philyaw, Fleming met with Chuck Homan, Philyaw's supervisor. She told Homan that she was uncomfortable with Philyaw touching her and that she had discussed the situation with Philyaw. Homan informed Fleming that if anything further happened, she should tell him and also report any further incidents to Boeing's EEO officer.

In January 1993, in the course of investigating another employee's complaint[2] against Philyaw, Eve MacCrone, Boeing's EEO officer, interviewed Fleming. Fleming told MacCrone that she, too, was uncomfortable with Philyaw touching her and looking at her. MacCrone's investigation resulted in Philyaw's demotion (and consequent reduction in salary), and in a written warning being placed in Philyaw's personnel file. Fleming was also assigned to a different supervisor. She had no further problems with Philyaw.

---

[2]Elizabeth Craig, a secretary at Boeing, complained that Philyaw had been excessively complimentary to her and had stared at her.

3

The only issue on appeal is whether the district court was correct in holding that Fleming's evidence of hostile work environment sexual harassment was not sufficient to withstand Boeing's motion for summary judgment.[3] The district court found that "the actions of Philyaw [were] not ... severe or pervasive enough to create an objectively abusive or hostile work environment," and that "Fleming [had] not shown that a reasonable person would find the alleged acts offensive." Because Fleming failed to show that she could prove one element of her hostile environment sexual harassment claim under Title VII, the district court granted summary judgment to Boeing on Fleming's Title VII claim. On appeal, Fleming argues that the district court misconstrued the "severe and pervasive" requirement and that the court therefore erred when it granted summary judgment in favor of Boeing. Boeing responds that the district court was correct in finding that Fleming did not adduce evidence sufficient to show an objectively hostile work environment. In the alternative, Boeing contends that, even if Fleming's proof was sufficient to withstand summary judgment on the objectively hostile work environment requirement, she cannot show that Boeing was somehow responsible for the actions of Philyaw, and her Title VII claim against Boeing fails.

We agree. Even if we were to decide that Philyaw's conduct was sufficiently "severe or pervasive" to create a hostile work environment, Fleming presented no evidence that Boeing is directly or indirectly liable for Philyaw's actions. We conclude, therefore, that the district court was correct in granting summary judgment to Boeing on Fleming's claims.

B.

An employer can be either directly or indirectly liable for its employee's sexual harassment of another employee. Direct liability lies when the employer "knew, or upon reasonably diligent inquiry should have known, of the harassment and failed to take immediate and appropriate

---

[3]Fleming argued before the district court that she had been the victim of both sexual and racial discrimination at Boeing. Her complaint to the Equal Opportunity Employment Commission ("EEOC"), however, made no mention of racial discrimination, and the district court found that any such claim was time barred. Fleming does not appeal this finding, and therefore the only issue on appeal is whether her Title VII hostile environment sexual harassment claim survives Boeing's motion for summary judgment.

corrective action." *Faragher v. City of Boca Raton,* 111 F.3d 1530, 1535 (11th Cir.1997) (en banc).[4] An employer is indirectly liable for hostile environment sexual harassment in two situations:  "(1) when a harasser is acting within the scope of his employment in perpetrating the harassment;  and (2) when a harasser is acting outside the scope of his employment, but is aided in accomplishing the harassment by the existence of the [employment] relationship." *Id.* at 1536 (citations omitted).  The harasser acts within the scope of his employment only when he takes the harassing actions to accomplish one of the employer's objectives or when the employer "explicitly or implicitly authorized ... such harassment."  *Id.* at 1537.  The harasser is aided by the existence of the employment "only if the harassment is accomplished by an instrumentality of the [employment] or through conduct associated with the [employment]." *Id.* (citing *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1560 (11th Cir.1987)(holding that where the harasser threatened to fire his victim, the harassment was aided by the existence of the employment)).

In this case, Boeing cannot be indirectly liable for Philyaw's alleged harassment of Fleming. Philyaw's behavior toward Fleming cannot be seen as an attempt to accomplish any of Boeing's objectives and there is no indication that Boeing authorized the harassment.  Philyaw was therefore acting outside the scope of his employment.  In addition, Philyaw never used any authority conferred on him in order to accomplish the harassment;  consequently, Philyaw's actions were not aided by the existence of his employment relationship with Boeing.

If Boeing is liable for Philyaw's conduct, it is liable directly because it either knew or should have known of the harassment and "failed to take immediate and appropriate corrective action." *Id.* at 1535.  We conclude that Boeing is not liable under this standard.  Boeing knew of Philyaw's

---

[4]Our decisions both before and after *Faragher* have defined the employer's duty to act as a duty to take "prompt remedial action." *See e.g., Huddleston v. Roger Dean Chevrolet,* 845 F.2d 900, 904 (11th Cir.1988);  *Reynolds v. CSX Transp., Inc.,* 115 F.3d F.3d 860, 866 (11th Cir.1997) (per curiam).  We therefore believe that the standard enunciated in *Faragher,* "immediate and appropriate corrective action," imposes the same duty to act, despite the different terminology.

conduct in September 1992, when Fleming complained to Homan.[5] Homan told Fleming that he would talk to Philyaw and that Fleming should notify both Homan and MacCrone, Boeing's EEO officer, if she had further problems. Fleming never told either that she had any further problems until MacCrone contacted Fleming in January 1993 to inquire whether Fleming had any complaints about Philyaw. Fleming told MacCrone that she did. As a result of MacCrone's investigation of these charges, Philyaw was demoted, his pay was decreased, and Fleming was assigned to a different supervisor. She testified that she had no further problems with Philyaw. We conclude that Boeing's actions constituted immediate and appropriate corrective action and that therefore Boeing is not liable for Fleming's claim.

### III.

### A.

Alexander, who is also black, was assigned by Tempforce to Boeing from 1989 to 1991. The acts giving rise to her claims against Boeing occurred after she was assigned to the Group on June 18, 1991. While working in the Group, Alexander had occasion to perform secretarial work for Philyaw. She alleges that between June 19 and July 13, 1991, and again in August 1991, Philyaw sexually harassed her by "persistent unwelcome touching," "leering at [her] for long periods of time in a manner which made her feel as though she was naked," telling her that she was a "beautiful black creature," and making references to kissing her and lying in bed with her.

In July 1991, Alexander asked Philyaw to stop touching her, and Philyaw apologized. She also complained to Charlotte Sherwin, her supervisor at Tempforce, about Philyaw's conduct. Sherwin then called an employment manager at Boeing, Diane Beckum, to report Alexander's complaint. Beckum contacted Alexander and asked Alexander if she would like to speak with

---

[5]A plaintiff can show that the corporation knew of the alleged harassment "by showing she complained to higher management." *Faragher,* 111 F.3d at 1538. We will assume that Homan qualifies as higher management. If Homan does not qualify as higher management, then Boeing did not know of Philyaw's actions until January 1993, when Boeing's EEO officer contacted Fleming.

Beckum about Philyaw's conduct, but she declined, telling Beckum that the situation was better since she had spoken to Philyaw.

In August 1991, after Philyaw "jabbed and tickled" her, Alexander complained to MacCrone about Philyaw's conduct. MacCrone investigated Alexander's complaint, and met with Philyaw and his supervisor, Vance Moore. MacCrone set up a meeting between Alexander, Philyaw, and Moore, and during this meeting Philyaw again apologized to Alexander. Philyaw was issued a verbal warning following the meeting, and Alexander was reassigned so that she no longer reported to him. Shortly thereafter, Alexander applied for a permanent position at Boeing without success. On November 8, 1991, Alexander left Boeing for a job with the United States Army.

The district court found that Alexander failed to file a timely charge of sexual harassment with the EEOC, and that her cause of action under Title VII was time barred. We decline to reach this issue because we find that, even if Alexander's EEOC charge was timely filed, Alexander has failed to make out a prima facie case of harassment for the purposes of Title VII.

B.

A threshold issue, but one that we need not decide here, is whether Boeing was Alexander's employer within the meaning of Title VII. Because Alexander was essentially a contract employee, it is arguable whether Boeing can be considered her employer for the purposes of Title VII liability. *See Reynolds,* 115 F.3d at 869 n. 12 (explaining test for determining whether a defendant is a plaintiff's employer). We assume without deciding that Boeing was Alexander's employer at the time the alleged sexual harassment took place.

Alexander's sexual harassment case, however, fails for the same reasons her co-appellant's case fails. Boeing is not indirectly liable for Philyaw's conduct because that conduct was not within the scope of his employment or aided by the existence of his employment. Boeing is not directly liable to Alexander because it took immediate and appropriate corrective action. Immediately after Alexander's Tempforce supervisor informed Beckum that Alexander had a problem with Philyaw, Beckum contacted Alexander about this complaint. Alexander declined to proceed with a complaint.

7

When she complained to MacCrone one month later, MacCrone immediately investigated Alexander's complaint. As a result of this investigation, Philyaw was given a verbal warning and Alexander was transferred to a different group. Philyaw did not harass Alexander after this disciplinary action. Boeing's response to Alexander's complaint constituted immediate and appropriate corrective action and Boeing is not liable to Alexander under Title VII.

Alexander also has failed to make out a case of retaliation—that she was denied permanent employment at Boeing because she complained about Philyaw's conduct.[6] In order to establish a prima facie case of retaliation prohibited by Title VII, the plaintiff must show "(1) that there was a statutorily protected participation; (2) that an adverse employment action occurred; and (3) that there was a causal link between the participation and the adverse employment action." *Bigge v. Albertsons, Inc.,* 894 F.2d 1497, 1501 (11th Cir.1990) (per curiam). Alexander fails to present evidence sufficient to establish the causation issue.

Boeing requires applicants for permanent secretarial positions to take and pass a typing test given by the State of Alabama; if the applicant fails the test, he or she will not be considered for a permanent secretarial job at Boeing. Alexander does not dispute that she failed the test; nor does she present any evidence that Boeing has ever hired an applicant for a secretarial position who failed the typing test. Alexander therefore fails to present sufficient evidence to create a material issue of fact as to whether Boeing refused to hire her because of her complaints about Philyaw; as a result, summary judgment was properly entered in favor of Boeing on Alexander's retaliation claim.

In summary, we find that appellants have failed to present evidence sufficient to support their Title VII claims and therefore affirm the judgment of the district court.

AFFIRMED.

---

[6]Title VII's anti-retaliation provision, 42 U.S.C.2000(e)3(a), provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made unlawful by [42 U.S.C. § 2000(e) ], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."