

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-3-2004

# Trunzo v. Assn Owners Hideout

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2088

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Trunzo v. Assn Owners Hideout" (2004). *2004 Decisions.* Paper 1031.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1031

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-2088

_____

MARY ALICE TRUNZO; JAMES TRUNZO,
                                        Appellants

v.

ASSOCIATION OF PROPERTY OWNERS OF THE HIDEOUT, INC.;
THOMAS GRELLA; ROSALIE STAHLER; LEO TARKETT;
LEONARD LONDON; BARBARA WARREN-PACE; ROBERT PRIEST;
ANTHONY ULLO; JANE KRASNY; KEVIN MCGOWAN

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 00-cv-02128)
District Judge:  Honorable James M. Munley

_____

Submitted Under Third Circuit LAR 34.1(a)
January 13, 2004

Before:  SLOVITER, RENDELL, and ALDISERT, <u>Circuit Judges</u>.

(Filed        February 3, 2004                )
_____

OPINION OF THE COURT
_____

RENDELL, <u>Circuit Judge</u>.

Plaintiff Mary Alice Trunzo ("Trunzo") and her husband James Trunzo appeal a

final order of the District Court, which granted separate motions for summary judgment

filed by defendants Association of Property Owners of the Hideout, Inc. ("POA"), Rosalie Stahler, Leo Tarkett, Leonard London, Barbara Warren-Pace, Robert Priest, Anthony Ullo, Jane Krasny and Kevin McGowan ("the individual defendants"), and by defendant Thomas Grella ("Grella"). We agree with the District Court that Trunzo has not presented sufficient evidence to support her sexual discrimination claims and that the defendants are entitled to judgment as a matter of law. Accordingly, we will affirm.

The District Court exercised jurisdiction based on 28 U.S.C. § 1331 and 28 U.S.C. § 1367. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary. Morton Intern., Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 679 (2003).

Trunzo was the community manager of the Hideout, a housing development in Lake Ariel, Pennsylvania, where she managed its daily operations and reported to the POA Board of Directors. In July of 1995, Grella purchased a home in the development. In mid-1997, Trunzo temporarily barred Grella from the Hideout's clubhouse pub because of his behavior towards the pub's staff. Motivated to some extent by Trunzo's decision, Grella ran for and won a position on the POA Board of Directors. Grella served on the Board from October of 1997 through October of 2000. During his tenure on the Board, Grella had several confrontations with Hideout employees who worked under Trunzo as community manager over what Grella perceived as incompetent service.

One of these incidents involved a false fire alarm at the pub on February 14, 1999.

2

When Hideout security personnel were unable to shut off the alarm in what Grella considered a timely fashion, he became confrontational and questioned their competence. The personnel filed complaints about Mr. Grella's behavior, and the security director filed a report about the incident with Rosalie Stahler, the Board's President at the time. When Stahler released the director's report to the full Board on March 9, 1999, Grella was upset that she had done so without his input or notification, and telephoned Trunzo to complain. Trunzo describes the phone call as profane and abusive. She claims that Grella swore throughout the conversation, constantly saying "F'ing this, F'ing that" and "us[ing] the 'C' word against her [Stahler]," and that he questioned Stahler's intelligence and competence.

An executive session of the Board met that evening. Because the person who normally took minutes of Board meetings was absent, Trunzo was pressed into service. She witnessed a heated discussion between Grella and the other Board members, during which Grella is alleged to have used profanity, and to have said that Stahler was a "fucking bitch," and that Stahler "had a bitch up her ass."

On June 24, 1999, Grella, upset that Stahler and Trunzo had met with a real estate broker to discuss the POA's possible purchase of a tract of land without notifying him, made another angry phone call to Trunzo. During this exchange, Trunzo alleges that Grella swore and screamed at her repeatedly, telling her that she was stupid and incompetent, and that she "didn't have the brains [she was] born with."

After the June 24 telephone conversation, Trunzo filed a complaint with Stahler, claiming that Grella's action created a hostile work environment. Grella then filed a "cross-complaint" against Trunzo in which he alleged that she had misused Hideout funds. On July 14, 1999, the POA Board instructed Grella to refrain from having any contact with Trunzo. Despite the fact that Grella complied with the Board's instruction and had no direct contact with Trunzo after that date, she claims that she continued to suffer from Grella's action, who, she alleges, continued to complain about her and to spread lies about her performance. She also claims that the Board did nothing to stop these continuing attacks.

On May 15, 2000, Trunzo took a leave of absence from her position due to health problems she attributed to Grella's conduct. Her employment contract was set to expire on May 31, 2000, but she and the Board agreed to extend the contract to June 30 to allow for negotiation of a new contract. During the negotiations, the Board offered Trunzo a one-year contract as community manager. Trunzo, who desired a four-year contract, did not accept the Board's offer, and her employment terminated on June 30, 2000.

Trunzo and her husband then filed this complaint, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., as amended, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq. After dismissing, with the agreement of the parties, the Title VII claims against the individual defendants and Mr. Trunzo's loss of consortium claim, the District Court then considered

4

the defendants' motions for summary judgment on the remaining claims, the Title VII claim against the POA, and the PHRA claims against the individual defendants and Grella.

Ultimately, the District Court found that "[t]he incidents that Trunzo complain[ed] of were isolated and sporadic," and that only the June 24 phone call "concerned her directly." Furthermore, it concluded that "Grella never again had an offensive encounter with her" after the POA Board instructed him to have no direct contact with her. As a result, it granted the motions for summary judgment. This appeal followed.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has held that Title VII supports a cause of action where sexual harassment was so pervasive that it had the effect of creating a hostile work environment and of altering the conditions of employment. Meritor Savings Bank, FSB v. Vinson, 477 U.S, 57, 66 (1986). In order to establish a hostile work environment sexual harassment claim, the plaintiff must show that: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability. Andrews v. City of

5

Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990). We agree with the District Court that, even if a jury could conclude that Trunzo has suffered intentional discrimination because of her sex, she has not presented sufficient evidence for a jury to conclude that the discrimination was pervasive and regular, or that respondeat superior liability existed.

Discrimination is pervasive where the "incidents of harassment occur either in concert or with regularity." Id. at 1484 (quotations and citations omitted). Trunzo recounts eleven incidents occurring over an 30-month period to support her argument that Grella's alleged harassment of her was pervasive. However, at least three of these incidents - Grella's "cross-claim," his advice to a candidate for the Board who criticized Trunzo's job performance, and his involvement in the Board's decision not to offer Trunzo a four-year contract - cannot be considered acts of sexual harassment unless they are part of a wider pattern of sexual harassment against Trunzo or women in general. No such pattern exists here. Of the eight incidents where Grella allegedly intimidated or humiliated Hideout employees, Trunzo witnessed only three of these, and, of those three incidents, only once - during the June 24 phone call- was Grella's conduct specifically directed at her. Furthermore, each of these incidents occurred because of Grella's belief, reasonable or not, that he had been personally slighted or that Hideout employees had performed their jobs poorly. Grella's verbal assaults upon various Hideout employees, including some males, were clearly inappropriate and outside the bounds of proper behavior. However, they were not so pervasive or regular as to create a hostile work

6

environment for Trunzo on the basis of her gender.

Moreover, we cannot find respondeat superior liability in this fact pattern. Respondeat superior liability exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action." Id. at 1486 (citing Steele v. Offshore Shipbuilding Inc., 867 F.2d 1311, 1316 (11th Cir. 1989)). Trunzo argues that the Board members became aware of Grella's harassment of her as early as late 1997 or February 1998. However, the record establishes merely that they were aware that Grella had had some confrontations over a variety of matters with Hideout employees and other Board members, not that he was allegedly creating a hostile work environment for Trunzo on the basis of her gender. It was not until June 24, 1999 or shortly thereafter, when Trunzo filed a complaint with Stahler about Grella's June 24 phone call, that the Board learned of Grella's alleged harassment of Trunzo. The POA Board then instructed Grella not to have any further contact with Trunzo on July 14, 1999, and, indeed, Grella had no contact with her between that date and June 30, 2000, the day her employment with the Hideout ended. Thus, the Board's action was not only prompt, it was also effective. Nevertheless, Trunzo argues that Grella continued to "harass" her after that date through his continued criticism of her job performance and his involvement in the Board's eventual decision not to offer her a four-year contract. However, the Board was not required to expel Grella from its membership or silence him in response to her complaint.

In affirming the District Court's grant of summary judgment with respect to the

7

Title VII claim on the basis of Trunzo's failure to establish respondeat superior liability, we also resolve the issue of whether the District Court was correct in granting summary judgment with regards to the PHRA claims. Section 955(e) of the PHRA provides that it is illegal for any employee "to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice." 43 P.S. § 955(e). Trunzo argues that each member of the POA Board aided and abetted Grella's discriminatory conduct because each member knew of Grella's harassment of her, and no member can point to any attempt that he or she took to prevent Grella's continued harassment of her. However, as we pointed out above, the Board did not become aware of Grella's conduct until June 24, 1999, so the members' failure to act prior to that date cannot be deemed aiding and abetting. The Board instructed Grella not to have any contact with Trunzo promptly after learning of Trunzo's complaint, and Grella abided by this instruction. The members' failure to prevent Grella from continuing to criticize Trunzo's job performance after that date cannot be deemed aiding and abetting an unlawful discriminatory practice because Grella's post-instruction conduct did not constitute an unlawful discriminatory practice.

Accordingly, the motions for summary judgment were properly granted by the District Court and we will AFFIRM.